# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 08-cr-271-RCL-5 |
| ALLAN JOSEPH TANGUAY, | |
| *Defendant.* | |

## MEMORANDUM OPINION

Having served 22 months of his 36-month term of supervised release, defendant Allan Joseph Tanguay moves *pro se* for early termination of supervised release pursuant to 18 U.S.C. § 3583(e)(1). ECF No. 569. The U.S. Probation Office recommends that the Court deny Tanguay's motion, noting that Tanguay still owes approximately $19,000 of the $25,000 fine the Court sentenced him to pay. ECF No. 572 at 2. The Government, however, is satisfied that Tanguay will continue making monthly payments even when he is no longer under supervision and thus does not oppose Tanguay's motion. *See* ECF No. 575 at 1. Upon consideration of Tanguay's motion, ECF No. 569, the U.S. Probation Office's recommendation, ECF No. 572, the Government's memorandum, ECF No. 575, and the record herein, the Court will **GRANT** Tanguay's *pro se* motion for early termination of supervised release.

### I. BACKGROUND

Tanguay's convictions stem from his involvement in an elaborate and lucrative tax-fraud scheme. *See* ECF No. 507, Presentence Investigation Report ("PSR") ¶¶ 16–17. In 1996, Tanguay's co-defendant Eddie Ray Kahn founded an organization called "American Rights Litigators." *Id.* at ¶¶ 15–16. From 1996 until 2004, American Rights Litigators helped more than

4,000 individuals frustrate the tax collection and enforcement efforts of the Internal Revenue Service ("IRS"). *Id.* at ¶ 19. It did so through a variety of schemes, including by selling fictitious financial instruments to its customers and encouraging them to send those documents to the U.S. Department of the Treasury and to the IRS in purported payment of their taxes. *United States v. Hunter*, 554 Fed. App'x 5, 6 (D.C. Cir. 2014) (per curiam); PSR ¶ 24. This business proved to be highly lucrative. *See* PSR ¶ 19. From 1996 to 2004, American Rights Litigators made more than $2 million on membership fees. *Id.*

Tanguay worked for American Rights Litigators as a manager. PSR ¶ 15. In this role, Tanguay partnered with Eddie Ray Kahn and other co-defendants to develop and sell new tax-defiance schemes. *Id.* at ¶¶ 15–17. He also used his background as a paralegal to conduct legal research and writing for the business. *Id.* at ¶ 15.

Based on his work for American Rights Litigators, a jury found Tanguay guilty of conspiring to defraud the United States and to commit mail fraud in violation of 18 U.S.C. §§ 2 & 371, and of committing mail fraud in violation of 18 U.S.C. §§ 2 & 1341. ECF No. 328 at 4–5. In September 2010, the Court sentenced Tanguay to five years' imprisonment on the conspiracy charge, a concurrent term of ten years' imprisonment for mail fraud, an aggregate term of 36 months' supervised release, and a $25,000 fine. ECF No. 406 at 2–5. After the D.C. Circuit affirmed Tanguay's convictions but vacated and remanded his sentence, the Court resentenced him to an aggregate term of ten years' imprisonment, concurrent terms of 36 months' supervised release, and a $25,000 fine. *See Hunter*, 554 Fed. App'x at 6; ECF No. 534. On July 17, 2019, Tanguay was released from prison and began his 36-month term of supervised release. *See* ECF No. 572 at 1. As of today, he has served 22 months of that term. His supervision is set to expire on July 16, 2022. *Id.*

Tanguay now moves *pro se* for early termination of supervised release under 18 U.S.C. § 3583(e)(1). ECF No. 569. He argues that early termination is proper because he has complied with all of his conditions of supervised release, has no criminal history other than the instant offenses, and has no history of violence. *Id.* at 2. Tanguay further represents that he remains "current and timely with [the] monthly payments" on his $25,000 fine "as [his] bank automatically sends the payment each month and will continue to do so[.]" *Id.* at 1. He asks for the early termination of his supervised release so that he can "freely travel to visit family members" and "participate in his flying ministry with Air Mobile Ministries," where he previously "conduct[ed] missionary flights to Haiti, the Bahamas[,] and other regions when needed." *Id.* at 3. In support of his motion, Tanguay submits letters from the President of Air Mobile Ministries and from the retired pastor of his church. *Id.* at 5–6.

After receiving Tanguay's motion, the Court ordered the U.S. Probation Office to provide a recommendation on the motion. *See* ECF No. 571. In its response, the Probation Office recommended that Tanguay's motion be denied because he has an outstanding balance of $19,632.12 on his $25,000 fee. ECF No. 572. The Probation Office further represented that, pursuant to Federal Rule of Criminal Procedure 32.1(c)(2)(C), it advised the United States Attorney's Office for the District of Columbia of Tanguay's request for early termination of supervised release. *Id.* at 2. The U.S. Attorney's Office likewise opposed the motion due to Tanguay's outstanding fine. *Id.* Finally, the Probation Office reported that Tanguay currently maintains a stable residence with his wife in Florida, has not engaged in any criminal conduct while under supervision, has submitted three negative drug tests, and is supervised on a "low risk" caseload. *Id.*

3

Tanguay responded to the Probation Office's report with a letter explaining that he has entered into a financial agreement with the Financial Litigation Unit of the United States Attorney's Office. ECF No. 574 at 2. Under the terms of the agreement, Tanguay represents, he makes (and will continue to make) monthly payments of $250 to the Court, which are automatically transferred from his bank account. *Id.* Tanguay says that he will continue to make these automatic payments until he has paid the $25,000 fine in full. *Id.*

After Tanguay submitted his letter, the Government filed a memorandum indicating that it no longer opposes his motion for early termination of supervised release. ECF No. 575 at 1. The Government states that it spoke with Tanguay's supervising probation officer in the Middle District of Florida, who represents that Tanguay has been "entirely compliant with [his] conditions and has transitioned well to community life." *Id.* at 2. Based on this positive report—and the fact that Tanguay has served 22 months of his 36-month term of supervised release—the Government believes that supervised release is no longer necessary. *Id.* As for the outstanding balance on Tanguay's fine, the Government reports that "defendant has taken great care to make sure his payments were made and received." *Id.* at 3. And if Tanguay's supervised release is terminated early, thereby eliminating the condition that he pay at least $250 per month toward the outstanding balance on his fee, the Government trusts that Tanguay will continue making payments pursuant to an agreement with the Financial Litigation Unit. *Id.*

## II. LEGAL STANDARD

Motions for early termination of supervised release are governed by 18 U.S.C. § 3583(e)(1). That section allows courts to terminate a term of supervised release early when three conditions have been met and when certain factors set forth in 18 U.S.C. § 3553(a) support the early termination. *See* 18 U.S.C. § 3583(e)(1). First, a defendant seeking early termination must

have served at least one year of supervised release. *Id.* Second, the court must be satisfied that the early termination is "warranted by the conduct of the defendant." *Id.* Third, the court must find that the early termination is in "the interest of justice." *Id.* If these three requirements have been met, the court must consider whether an early termination is consistent with certain § 3553(a) factors. Those factors are:

> **(a)(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> **(2)** the need for the sentence imposed —
>
> . . .
>
>> **(B)** to afford adequate deterrence to criminal conduct;
>>
>> **(C)** to protect the public from further crimes of the defendant;
>>
>> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> . . .
>
> **(4)** the kinds of sentence and the sentencing range established for
>
>> **(A)** the applicable category of the offense committed by the applicable category of defendant as set forth in the [U.S. Sentencing Guidelines] . . . in effect on the date the defendant is sentenced;
>
> **(5)** any pertinent policy statement —
>
>> **(A)** issued by the Sentencing Commission pursuant to [28 U.S.C. § 994(a)(2)] subject to any amendments made to such a policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under [28 U.S.C. § 994(p)]); and
>>
>> **(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced;
>
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a); *see id.* at § 3583(e)(1) (listing the § 3553(a) factors courts must consider).

Under certain circumstances, courts must hold a hearing before granting a motion for early termination of supervised release. Section 3583(e)(1) provides that a court may terminate a defendant's supervised release "pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation." 18 U.S.C. § 3583(e)(1). Federal Rule 32.1(c), in turn, provides that "[b]efore modifying the conditions of probation . . . the court must hold a hearing, at which the defendant has the right to counsel and an opportunity to make a statement and present any information in mitigation." Fed. R. Crim. P. 32.1(c)(1). A hearing is not required, however, if the defendant waives the hearing or if the relief sought is favorable to the defendant and does not extend the term of supervised release, and an attorney for the government has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so. Fed. R. Crim. P. 32.1(c)(2). Here, because the relief sought is favorable to Tanguay and because the Government does not oppose the relief requested, the Court need not hold a hearing. *See* ECF No. 575.

## III. ANALYSIS

### A. Tanguay is Eligible for Early Termination of Supervised Release Under 18 U.S.C. § 3583(e)(1)

As a threshold matter, the Court finds that Tanguay is eligible for early termination of supervised release. Tanguay has served more than one year on supervised release. *See* ECF No. 572 at 1. The Court is also satisfied that the early termination of supervised release is "warranted by the conduct of the defendant." 18 U.S.C. § 3583(e)(1). Since Tanguay began his term of supervision in July 2019, he has been "entirely compliant with [his] conditions" of supervised release. ECF No. 575 at 2. One of those conditions requires him to pay $250 per month toward the outstanding balance of his $25,000 fine. *Id.* at 3. According to his supervising probation officer, Tanguay "has taken great care to make sure his payments were made and received." *Id.* In addition

6

to complying with all conditions of supervised release, Tanguay has successfully reintegrated into his community. *Id.* At age 78, Tanguay "maintains a stable residence" with his wife in "a mostly elderly community" and spends time with his children, grandchildren, and great grandchildren. PSR ¶ 3; ECF No. 569 at 3. He is also an active member of his church, where he participates in various ministry groups. ECF No. 569 at 3. Given Tanguay's spotless record on supervised release, along with his efforts to reintegrate into his community, the Court finds that the early termination of supervised release is warranted by Tanguay's conduct. *See* 18 U.S.C. § 3583(e)(1).

The Court also finds that the early termination of Tanguay's term of supervised release is in "the interest of justice." 18 U.S.C. § 3583(e)(1). The Court sentenced Tanguay to concurrent terms of 36 months' supervised release, which was (and is) the maximum term authorized by statute. *See* 18 U.S.C. § 3583(b)(2) (authorizing a term of "not more than three years" for a Class C felony); *see also* PSR ¶ 95. A sentence of 22 months' supervised release thus falls within Congress's prescribed term of supervised release for Tanguay's offenses. Moreover, as explained above, Tanguay has fully complied with all terms of supervision during that time. For these reasons, the Court finds that the early termination of supervised release is in "the interest of justice." 18 U.S.C. § 3583(e)(1).

## B. The Relevant § 3553(a) Factors Support the Early Termination of Supervised Release

Because the threshold requirements for early termination of supervised release under § 3583(e)(1) have been met, the Court next must consider whether early termination is consistent with the relevant § 3553(a) factors. *See* 18 U.S.C. § 3583(e)(1); *accord United States v. Mathis-Gardner*, 783 F.3d 1286, 1288 (D.C. Cir. 2015). This inquiry is guided by the purpose of supervised release, which is to "fulfil[ ] rehabilitative ends." *United States v. Johnson*, 529 U.S. 53,

59 (2000). On balance, the Court finds that the § 3553(a) factors weigh in favor of an early termination.

### i.   Nature and Circumstances of the Offenses

Tanguay was convicted of serious offenses against the United States. *See* 18 U.S.C. § 3553(a)(1). As explained above, Tanguay worked as a manager for an organization that sold tax-defiance schemes to thousands of customers. *Hunter*, 554 Fed. App'x at 6; PSR ¶ 19. In so doing, Tanguay helped thousands of people frustrate the IRS's tax collection and enforcement efforts. PSR ¶ 19. He also profited off this fraudulent scheme. *See id.* From 1996 to 2004, American Rights Litigators made $2 million in membership fees. *Id.* Based on this deceitful conduct, a jury found Tanguay guilty of conspiring to defraud the United States and to commit mail fraud in violation of 18 U.S.C. §§ 2 & 371, and of committing mail fraud in violation of 18 U.S.C. §§ 2 & 1341. ECF No. 328 at 4–5. The statutorily prescribed terms of imprisonment for these offenses reflect their seriousness. Defendants convicted of mail fraud can be sentenced to up to twenty years' imprisonment. PSR ¶ 92. And Tanguay's conspiracy charge could be punished by up to five years' imprisonment. *Id.* at ¶ 91. The serious nature of Tanguay's offenses suggest that a three-year term of supervised release could be necessary to ensure his transition back into the community.

### ii.   Tanguay's History and Characteristics

Tanguay's history and characteristics, however, weigh in favor of the early termination of supervised release. 18 U.S.C. § 3553(a)(1). Tanguay has no criminal record besides the present offenses. PSR ¶¶ 55–56. And since his release from prison in July 2019, Tanguay has fully complied with all terms of supervision. *See* ECF No. 575 at 2. This factor thus weighs in Tanguay's favor.

    *iii.*    *The Need to Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes*

Next, the Court finds that requiring Tanguay to complete his term of supervised release is unnecessary to "afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B)–(C). Based on the information before it, the Court has no reason to believe that Tanguay will reoffend. Aside from the instant offenses, Tanguay has no criminal record. PSR ¶¶ 55–56. And at age 78, Tanguay is currently supervised on a "low risk" caseload. ECF No. 572 at 2. Finally, since his release from prison, he has complied with all terms of supervision. In so doing, Tanguay has demonstrated his respect for this Court and for the law. For these reasons, the Court has no reason to believe he will commit further crimes. Thus, because requiring Tanguay to finish his full term of supervised release is not necessary to deter future criminal conduct or to protect the public, this factor weighs in favor of the early termination of supervised release.

    *iv.*    *Sentencing Range for Tanguay's Offenses*

The sentencing range established for Tanguay's offenses further supports the early termination of supervised release. As explained above, the Court sentenced Tanguay to the maximum term of supervised release: 36 months. *See* 18 U.S.C. § 3583(b)(2) (authorizing a term of "not more than three years" for a Class C felony); *see also* ECF No. 507 at ¶ 95. Terminating his supervised release after 22 months is thus fully consistent with Congress's prescribed term of supervised release for Tanguay's offenses.

    *v.*    *Pertinent Policy Statement*

The Court is not aware of any "pertinent policy statement," so this factor has no impact on the Court's analysis. 18 U.S.C. § 3553(a)(5).

vi.   *Need to Avoid Unwarranted Sentencing Disparities*

Reducing Tanguay's term of supervised release from 36 months to 22 months will not cause "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Tanguay was convicted at trial alongside Eddie Ray Kahn, the founder of American Rights Litigators, and two other American Rights Litigators employees: Stephen Hunter and Danny True. PSR ¶¶ 9–11. A third American Rights Litigators employee, Jerry Williamson, pleaded guilty. *Id.* at ¶ 12. As explained in the sections that follow, the early termination of Tanguay's supervised release will not create an unwarranted sentence disparity with any of these co-defendants. *See* 18 U.S.C. § 3553(a)(6).

a.   Eddie Ray Kahn

The Court sentenced Eddie Ray Kahn, the founder and leader of American Rights Litigators, to an aggregate term of 20 years' imprisonment plus 36 months' supervised release. ECF No. 409 at 2; *see* PSR ¶ 15. Earlier this year, the Court granted in part Kahn's motion for compassionate release and reduced his sentence to time served (approximately 15 years). ECF No. 566. The Court then converted his 36-month term of supervised release to a 36-month term of home detention. *Id.* at 5. Given that Kahn was the founder and leader of American Rights Litigators (whereas Tanguay was only an employee) and given that Kahn had a Criminal History Category of II (whereas Tanguay had a Criminal History Category of I), reducing Tanguay's term of supervised release to 22 months would not create an unwarranted sentence disparity with Kahn. *See* PSR ¶ 15.

b.   Stephen Hunter & Danny True

Co-defendants Stephen Hunter and Danny True, employees of American Rights Litigators, were both convicted of conspiring to defraud the United States and of three counts of mail fraud.

ECF No. 328 at 2–3. Like Tanguay, both Hunter and True had a Criminal History Category of I. ECF No. 503 at ¶ 56; ECF No. 505 at ¶ 56. The Court sentenced both Hunter and True to an aggregate term of ten years' imprisonment plus 36 months' supervised release. ECF No. 530 at 3–4; ECF No. 532 at 3–4. Because Hunter and True were convicted of *three* counts of mail fraud while Tanguay was convicted of only one, reducing Tanguay's term of supervised release to 22 months would not create an unwarranted sentencing disparity with these co-defendants.

      c.  <u>Jerry Williamson</u>

Tanguay's fourth co-defendant, Jerry Williamson, also worked as an employee for American Rights Litigators. ECF No. 104 at ¶¶ 11–12. Based on his participation in the business, Williamson pleaded guilty to one count of mail fraud. PSR ¶ 12. The Court sentenced him to five months in a community correctional facility, plus 36 months of supervised release. ECF No. 445 at 1–2. Unlike Tanguay, however, Williamson had a Criminal History Category of VI. ECF No. 338 at 6 n.4. Thus, the disparity between Willamson's and Tanguay's terms of supervised release is not "unwarranted." 18 U.S.C. § 3553(a)(6).

      *vii.*   *Need to Provide Restitution*

Finally, Tanguay was not sentenced to pay restitution, so "the need to provide restitution to any victims of the offense" does not affect the Court's analysis. 18 U.S.C. § 3553(a)(7).

* * *

Taken together, the Court finds that the relevant § 3553(a) factors support the early termination of supervised release. Though the serious nature of Tanguay's offenses could suggest that a three-year term of supervised release is necessary to ensure his transition into the community, Tanguay's record while under supervision shows this not to be the case. Early termination is further supported by the fact that Tanguay was originally sentenced to the maximum term of supervised

release authorized by statute, is unlikely to reoffend, and has agreed to continue making monthly payments to the Financial Litigation Unit until he has paid his $25,000 fine in full. *See* ECF No. 574 at 2. For these reasons, the Court finds that the § 3553(a) factors support the early termination of supervised release.

## IV. CONCLUSION

Because Tanguay meets the threshold requirements for an early termination of supervised release under 18 U.S.C. § 3583(e)(1), and because the relevant § 3553(a) factors support an early termination, the Court will **GRANT** Tanguay's *pro se* motion for early termination of supervised release, ECF No. 569. A separate Order consistent with this Memorandum Opinion shall issue contemporaneously.

Date: May 17, 2021

Hon. Royce C. Lamberth
United States District Judge